RECEIVED
IN LAKE CHARLES, LA.
APR 14 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RODNEY WILLIAMS | : | DOCKET NO. 2:06 CV 1547 |
| VS. | : | JUDGE MINALDI |
| CLASSIC LOCKSMITH, LLC, et al | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by defendants Classic Locksmith, LLC ("Classic") and Gary M. Tilley ("Tilley") [doc. 32]. The plaintiff, Rodney Williams ("Williams"), filed an Opposition [doc. 37]. Classic filed a Reply [doc. 38].

### FACTS

Prior to September 2005, Williams was in the business of transporting and installing manufactured housing throughout the southern region.[1] After Hurricane Katrina, Williams learned that the Federal Emergency Management Agency ("FEMA") had a contract with Fluor Enterprises, Inc. ("Fluor") to provide disaster relief services in several states, including the transportation and installation of temporary housing.[2] Consequently, Williams became interested in performing such services for Fluor and that learned persons or firms who were citizens or domiciliaries of Louisiana

---

[1] Complaint [doc. 1].

[2] *Id.*

1

would be given preferential consideration.[3] Due to this restriction, Williams prepared a competitive bid proposal in Classic's name for submission to Fluor to furnish certain services for the transportation and installation of manufactured housing on a per unit basis in accordance with FEMA's requirements.[4]

Fluor accepted Classic's proposal, and Fluor and Classic entered into a Blanket Ordering Agreement ("BOA") effective October 1, 2005.[5] At approximately the same time, Classic and Williams entered into a "joint venture/partnership" agreement, whereby Classic was to pay Williams $375.00 per housing unit delivered and $.50 per mile traveled from the funds payable by Fluor to Classic under the BOA.[6] This agreement was memorialized by a letter from Classic to Williams on December 13, 2005.[7]

On February 15, 2006, Classic paid Williams $165,266.50 for fees earned from October 12, 2005 through December 31, 2005.[8] However, on January 17, 2006, Classic notified Williams of its unilateral rescission of the agreement with Williams.[9] Williams alleges that from January 1, 2006 to February 15, 2006, Fluor paid Classic over $10 million and that under the terms of the "joint venture/partnership agreement" between Williams and Classic, his portion of that payment is more

---

[3] Pl.'s Opp. [doc. 37].

[4] Complaint [doc. 1]. Classic is a Louisiana Limited Liability Company and Tilley serves as Classic's manager and sole member. Def.'s Memo. in Support of MSJ [doc. 32-1].

[5] Complaint [doc. 1].

[6] Pl.'s Opp. [doc. 37].

[7] *Id.*

[8] Complaint [doc. 1].

[9] Pl.'s Opp. [doc. 37].

2

than $400,000.[10]

Classic avers that Williams was unhappy about changes in the working structure, received a final payment, and left Louisiana to return to his home in Alabama.[11]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead

---

[10] Complaint [doc. 1].

[11] Def.'s Memo. in Support of MSJ [doc. 32-1].

a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

Tilley seeks dismissal of all claims against him in his individual capacity because Williams cannot prove that Tilley participated in any alleged conspiracy or was a party to any agreements with Williams. Classic seeks dismissal of all claims regarding a breach of any agreement between Classic and Williams because no "joint venture" existed between Classic and Williams and Williams was paid all proceeds owed to Williams. Williams counters that a binding contract exists between Williams and Classic, a joint venture exists, and Williams is owed funds under the contract.

### Claims Against Tilley

Williams' complaint alleges that Tilley, Classic, and Fluor engaged in a conspiracy to deprive Williams of his property rights under the BOA between Classic and Fluor.[12] Tilley argues that Williams has no evidence of any involvement by Tilley or Classic in any conspiracy. Tilley notes that he was not a party to the BOA between Fluor and Classic; thus, Tilley argues that Williams has no evidence that Tilley, in his personal capacity, should be a defendant in this matter.

La. Civ. Code art. 2324 provides "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." "The actionable element in a claim for civil conspiracy is not the conspiracy itself, but rather the underlying tort that the conspirators agree to perpetuate and actually commit." *Johnson v. CHL Enterprises, et al*, 115 F.Supp.2d 723, 731 (W.D.La. 2000). To impose liability for a civil conspiracy, a plaintiff must prove that an agreement existed to commit an illegal or tortious act that resulted in the plaintiff's injury. *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 4/8/98); 710 So. 2d 1171,

---

[12] Complaint [doc. 1]. This Court granted Fluor's Motion to Dismiss [doc. 16].

1174.

Williams has not produced any evidence to demonstrate that Tilley or Classic agreed to commit an illegal or tortious act against Williams. Accordingly, the civil conspiracy claims against Classic and Tilley are DISMISSED. Moreover, Tilley's affidavit states that he did not conduct any business actions in a personal capacity and Williams has not presented any evidence that Tilley acted in a personal capacity in forming the BOA or the alleged joint venture agreement.[13] Accordingly, any claims against Tilley in his individual capacity are DISMISSED.

### Claims Against Classic

Williams alleges that he entered into a "joint venture/partnership" agreement with Classic that is memorialized in a letter from Classic.[14] Classic argues that Williams cannot produce evidence that the parties' agreement meets the requirement for a partnership and/or joint venture under Louisiana law. Classic points to Tilley's affidavit, in which he states that Williams did not provide working capital, equipment, or contribute anything to the enterprise.[15] Classic also notes that Williams did not share in the profits, but was paid a certain amount for mileage and a certain amount per housing unit, and avers that Williams has no evidence that he exercised any control of his work.

Additionally, Classic seeks dismissal of all remaining claims because Williams cannot prove that he is entitled to payment for work performed from January 1, 2006 to February 5, 2006. Classic notes that it paid Williams at least $187,766.50 for work he completed on Classic's behalf.[16]

---

[13] Def.'s Ex. B (Tilley Aff.) [doc. 32-4].

[14] Complaint [doc. 1].

[15] Def.'s Ex. B (Tilley Aff.) [doc. 32-4].

[16] *Id.*

Further, Tilley's affidavit stated that after he informed Williams of a business arrangement with new partners and warned Williams of future pay cuts, Williams stated he would not accept a decrease in pay and would return to his home in Alabama.[17]

Williams contends that a valid, binding contract existed between Williams and Classic and argues that proof of the contract is reflected in the letter dated December 13, 2005 from Tilley to Williams, Classic's payment of $165,266.50 for fees earned from October 12, 2005 to December 31, 2005, and the January 17, 2006 letter attempting to rescind the parties' agreement. Williams argues that Classic's second letter shows the existence of the parties' agreement and establishes that Classic understood the terms and effects of the contract and grasped the formal requirements of the agreement's dissolution.

Williams adds that the agreement between Classic and Williams is also a joint venture because there was a sharing of profits and losses and each party retained some control over the business. Williams notes that Classic, as a Louisiana entity, provided the needed status as a preferred vendor for Fluor and FEMA, while Williams provided expertise and knowledge necessary to create a successful bid proposal for submission to Fluor and the necessary experience for a business involved in the transportation and installation of mobile homes and travel trailers. Williams insists that the profits, losses and business control were shared by the parties as a function of this interdependence.

A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party. La. Civ. Code art. 2024. A contract for an indefinite duration may be terminated at the will of either party. *See Jackson et al. v. The East Baton*

---

[17] *Id.*

6

*Rouge Parish Indigent Defender's Board et al.*, 353 So. 2d 344 (La. App. 1 Cir. 1977), *writ denied* 354 So. 2d 1385 (La. 1978).

A joint venture results from "two or more persons undertaking to combine their efforts, knowledge, property, or labor to engage in and carry out a single business venture for joint profits, where profits and losses are shared, with each party having some right of control over the business." *Garber v. Badon*, 2007-1497 (La. App. 3 Cir. 4/2/08); 981 So. 2d 92, 102. "The requisite criteria for the existence of a joint venture (and a partnership) have been defined as follows: (1) a contract between two or more persons; (2) a juridical entity or person is established; (3) contribution by all parties of either efforts or resources; (4) the contribution must be in determinate proportions; (5) there must be joint effort; (6) there must be a mutual risk vis-a-vis losses; (7) there must be a sharing of profits." *Id.* at 103 (quoting *Cajun Elec. Power Coop., Inc. v. McNamara*, 452 So. 2d 212, 215 (La. App. 1 Cir. 1984)).

Classic has satisfied its burden for summary judgment; therefore, the burden shifts to Williams to demonstrate that there are specific facts presenting a genuine issue for trial. Williams attaches his affidavit, the December 2005 letter "contract agreement" between Williams and Classic, a copy of his payment received for work performed for October 12, 2005 to December 31, 2005, and Classic's January 17, 2006 letter to Williams to evidence the parties' agreement.[18] Williams argues that these documents prove the existence of the parties' joint venture agreement and insists that Classic's January 17, 2006 letter demonstrates Classic's understanding that the parties had a binding agreement. Williams also attaches Exhibit "D," which appears to be a spreadsheet listing various amounts and information; however, this document is unsworn and unverified and is inadmissible as

---

[18] Pl.'s Exs. A, B, C [doc. 37-1--37-4].

summary judgment evidence.[19]

Williams has presented sufficient evidence that a contract existed between Classic and Williams. The parties' contract was memorialized in the December 13, 2005, and Classic validly terminated the contract and notified Williams in its January 17, 2006 letter. Williams has not presented any competent evidence that he performed work after January 1, 2006 for which he was not compensated. Williams' presented evidence is also insufficient to demonstrate that a disputed issue regarding whether a joint venture existed between Williams and Classic. Although the parties had a valid contract, Williams has not produced evidence that the agreement satisfied the requirements of a joint venture, namely that there was a sharing of the profits, that a juridical entity existed, and that the parties' contributions were in determinate proportions. Accordingly, all claims against Classic are DISMISSED.

IT IS ORDERED that Classic and Tilley's motion for summary judgment, [doc. 32], is hereby GRANTED.

IT IS FURTHER ORDERED that all claims against Tilley and Classic are hereby DISMISSED with prejudice at the plaintiff's cost.

Lake Charles, Louisiana, this ___ day of April, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[19] "Unsworn and unverified documents have been found to be inadmissible as evidence in a motion for summary judgment. And documents which are not certified or attached to an affidavit are also of insufficient evidentiary quality to be given weight in determining whether there are remaining genuine issues of material fact." *Lilly v. Allied Health Care*, 2007-0590 (La.App. 1 Cir. 6/6/08), 991 So. 2d 1096 (internal citations omitted).